# SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Gonzalo Gallegos (hereinafter referred to as "Gallegos") and Stone Cre8tions, Inc., its respective officers, directors, partners, employees, parent, subsidiaries, consultants, affiliates and successors (hereinafter "SCI"). This Agreement constitutes the entirety of agreements and understandings between Gallegos and SCI, and no amendments to or modifications of this Agreement will be valid or binding unless made in writing and signed by Gallegos and SCI.

WHEREAS Gallegos worked for SCI; and

WHEREAS Gallegos no longer works with SCI; and

WHEREAS Gallegos caused a lawsuit to be filed against SCI styled *Gonzalo Gallegos v. Stone Cre8tions,, Inc.* in the United States District Court for the Northern District of Georgia case number 1:16-cv-03203-CAP ("the Lawsuit");

WHEREAS the parties desire to compromise all disputes between them and to set forth their mutual understandings and agreements with respect thereto.

NOW, THEREFORE, in consideration of the payment of monies not available to other employees or persons, the receipt and sufficiency of which are hereby acknowledged, and in further consideration of the promises, covenants, and releases hereinafter set forth, the parties agree as follows:

1.    (a)    SCI agrees to pay Gallegos the gross sum of Fifteen Thousand Dollars ($15,000.00) in settlement of any and all claims Gallegos has in connection with their employment and termination of employment with SCI. SCI will remit this payment to Gallegos within ten (10) days of its receipt of proof of (1) his signature on this Agreement, and (2) the Court Approving the Parties Settlement, provided that Gallegos does not exercise his right of revocation as described in paragraph 8(g), below.

    (b)    The parties agree that the ($15,000.00) will be paid as follows:

        (i)    SCI shall issue one check to Gallegos in the amount of $4,250, less required withholdings and deductions, for which a W2 will issue.

        (ii)    SCI shall issue a second check to Gallegos in the amount of $4,250 for alleged liquidated damages, for which a Form 1099 will issue.

        (iii)    SCI shall issue a third check in the amount of $6,500 allocated as attorney's fees and expenses directly to Barrett & Farahany, LLP. Pursuant to Gallegos's designation of this sum as attorney's fees, SCI agrees that, so long as Barrett & Farahany, LLP provides a completed and executed Form W-9 with its Federal Tax Identification Number,

SCI will direct a Form 1099 to Barrett & Farahany, LLP for those monies and make no withholdings or deductions therefore.

    (c)    Gallegos agrees that he will be responsible for the payment of his share of any federal, state, or local taxes or assessments found to be due upon this Settlement Agreement or any money or other benefits received pursuant to this Settlement Agreement, and that he will hold harmless and indemnify SCI against the assertion of any claim for any such taxes, assessments, or related interest or penalties asserted as a result of his failure to pay taxes on the payments made herein.

    (d)    Gallegos agrees to dismiss with prejudice, the Lawsuit, upon receipt of the payments referenced in § 1 (b).

2. Gallegos forever and finally, release, settle, waive and discharges SCI and its parents, subsidiaries, affiliates and officers of and from any and all claims or causes of action arising or existing up to the date he signs this Agreement that he, or his heirs, executors, administrators, successors, or assigns has, may have, or claims to have against SCI, its parents, subsidiaries, consultants, predecessors, affiliates, directors, officers, agents, shareholders, employees, representatives, successors, and assigns. Specifically, Gallegos for himself, his heirs, his executors and his assigns hereby releases and forever discharges SCI, its parents, subsidiaries, predecessors, affiliates, directors, officers, agents, shareholders, representatives, employees, successors, and assigns from any and all claims or causes of action of any kind or nature that Gallegos has, may have or claims to have that arise out of or is related to his employment or termination from employment with SCI.

3. Without limiting the generality of the previous paragraph, it is expressly understood that Gallegos does hereby forever and finally release, settle, waive, reach full accord and satisfaction with, discharge, and acquit SCI and its parents, subsidiaries, consultants, affiliates, directors, officers, agents, representatives, successors and assigns from any and all claims or causes of action of each and every kind and nature whatsoever that Gallegos has or may have or may accrue up to the date of this Agreement and that Gallegos has or may have or may accrue as a result of Gallegos's employment or cessation of employment with SCI, including, but not limited to, claims of discrimination, retaliation, wrongful termination, harassment, general negligence, negligent retention, negligent training and supervision, infliction of emotional distress, ratification, breach of contract, fraud, breach of implied covenant of good faith and fair dealing, misrepresentation, failure to promote, assault, battery, invasion of privacy, defamation, claims for any work-related injury or illness, or any other alleged act arising in tort or contract, or pursuant to any state, federal, or local law or ordinance, including any claim pursuant to state workers' compensation laws, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. §1981, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act and extinguishes all claims and causes of

agreement or document have asserted in the Lawsuit, including any and all claims of discrimination, and violations of the Fair Labor Standards Act. Moreover, Gallegos acknowledge that he has been paid all of his wages and overtime payments during their employment with SCI.

4. Gallegos specifically agrees to direct his counsel to execute the attached Joint Motion for Approval of Settlement (Exhibit A) and return it to counsel for SCI within seven (7) days of signing this Agreement.

5. Gallegos specifically acknowledges that this Agreement cannot in any way be construed as an admission of liability by SCI of any violation of federal, state, or local law, regulation, or the common law of Georgia or any other state, or of any policy or procedure of SCI or the public. Gallegos understands that, to the contrary, SCI expressly and firmly denies any liability to them and is merely buying its peace.

6. Gallegos acknowledges that SCI has paid to him all monies that he is due related to his employment with SCI at the time of executing this agreement and, further, that SCI has provided him with all benefits of employment that he is due at the time of executing this agreement. Gallegos expressly acknowledge that he has no claims against SCI related to these matters.

7. Gallegos understands and acknowledges that this Agreement is intended to fully, completely, and forever resolve all disputes between him and SCI based upon all events, omissions, or acts occurring on or prior to its execution, as well as all other issues or claims in any way arising out of or connected with his employment and termination of employment with SCI. Specifically, Gallegos acknowledges and agrees that he has been paid all amounts due for all hours worked including any overtime compensation due to him. Gallegos further acknowledges that this Agreement shall not be the subject of any cause of action against SCI, its officers or agents, except to enforce the terms of this Agreement.

8. Pursuant to the provisions of the Older Workers' Benefit Protection Act, Gallegos expressly acknowledges that:

    (a) by entering into this Agreement, he is waiving all rights and claims he has or may have under the Age Discrimination in Employment Act of 1967, as amended by the Older Workers' Benefit Protection Act, arising out of or in any way connected with his employment or termination from employment with SCI;
    (b) he is aware that he is not waiving any rights or claims that may arise after the date this Agreement is executed;
    (c) this Agreement is written in a manner that he can understand and that he has, in fact, read and understands it;
    (d) the terms of settlement provide money to Gallegos that he would not otherwise be entitled to;
    (e) Gallegos is being given a period of 21 days within which to consider this

Agreement before signing it;

(f) Gallegos is hereby being advised to consult with an attorney before executing this Agreement and that he has, in fact, had the benefit and advice of an attorney during the Lawsuit and the negotiation and execution of this Agreement; and

(g) Gallegos has seven (7) days following the date of execution of this Agreement to revoke it, and that he may do so only in writing, via certified mail or registered delivery, to the attention of Raanon Gal, Taylor English Duma LLP, 1600 Parkwood Circle, Suite 400, Atlanta, Georgia, 30339.

9. The parties agree that they will not directly or indirectly challenge any paragraph of this Agreement as invalid or unenforceable and will take no action contrary to any of its provisions other than as ordered by a court of law.

10. The parties agree that, except as expressly set forth herein, each will bear its own attorneys' fees, costs and expenses.

11. Because all parties to this Agreement have been represented by counsel during the preparation of and negotiation over its terms, the parties agree that the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties. Should any provision of this Agreement be declared or be determined by any court or other body with proper jurisdiction to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

12. The laws of the state of Georgia shall govern the interpretation and performance of this Agreement should any dispute arise concerning or related to it. Furthermore, the Parties expressly agree to submit to the jurisdiction of the federal court system in the State of Georgia for any action of proceeding arising out of or relation to the terms of the agreement and agree that the exclusive venue of any action or proceeding arising out of or relating to the terms of this Agreement shall be in the federal courts of Georgia.

13. If any of the paragraphs set forth above are determined to be unenforceable, the Parties request that the court revise the covenant or covenants to make them enforceable to the maximum extent permitted by law. Each of these paragraph shall be construed as severable and independent agreements.

14. Gallegos represents, acknowledges, and asserts that he has entered into this Agreement knowingly and voluntarily after a reasonable time to consider it and that the only consideration he received for executing this Agreement is what is set forth herein. Gallegos further represents, acknowledges and asserts that he has had the advice of counsel during the negotiation and execution of this Agreement, that he has thoroughly discussed all aspects of this Agreement with his attorney, and that he fully understands the Agreement's meaning and intent.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals on the dates set forth below:

_____   Dated: 11-22-2016
Gonzalo Gallegos

_____   Dated: 11-23-2016
Stone Cre8tions, Inc.